TELEDYNE CONTINENTAL MOTORS v MUSKEGON TOWNSHIP

Docket No. 83364. Submitted November 13, 1986, at Grand Rapids.
    Decided July 10, 1987. Leave to appeal denied, 429 Mich —.

Teledyne Continental Motors, Division of Teledyne Industries,
    Inc., petitioned the Michigan Tax Tribunal for review of prop-
    erty tax assessments by respondent, Muskegon Township, of
    petitioner's industrial plant for the years 1982 through 1984.
    Respondent's appraiser used a cost approach to valuation, i.e.,
    replacement cost minus flat rate physical depreciation and
    "economic condition" factors, to arrive at an assessment of
    $10,895,520 for each of the years in question. The Tax Tribu-
    nal, in reducing respondent's assessments, adopted a "market
    value" valuation method proposed by petitioner, i.e., an analy-
    sis of eight comparable sales of general purpose industrial
    buildings was made yielding assessments of $3,765,000 for 1982,
    $3,770,000 for 1983 and $4,200,000 for 1984. Respondent ap-
    pealed.

    The Court of Appeals held:

    1. The Tax Tribunal properly determined that the highest
and best use of petitioner's property was for general industrial
uses, rather than its current limited use, given the industrial
plant's age and obsolescence.

    2. The Tax Tribunal committed no error in adopting the
market value computations of petitioner's appraisers. The fig-
ures were based on recent sales of highly comparable proper-
ties.

    3. The Tax Tribunal's selection of the market approach to
valuation instead of either the income or the cost method of
valuation comported with its duty to select an approach which
provides the most accurate valuation under the circumstances
of this case.

    Affirmed.

REFERENCES

Am Jur 2d, State and Local Taxes §§ 596 et seq.; 753 et seq.

Requirement of full-value real property taxation assessments. 42
    ALR4th 676.

See also the annotations in the Index to Annotations under Taxes.

1. TAXATION — ASSESSMENTS OF REAL PROPERTY — TRUE CASH VALUE — BURDEN OF PROOF.

A taxpayer has the burden of proof in establishing the true cash value of his property when challenging an assessment before the Michigan Tax Tribunal; the taxpayer must prove, by the greater weight of evidence, that the assessment was too high (MCL 205.737[3]; MSA 7.650[37][3]).

2. TAXATION — APPEAL — TAX TRIBUNAL.

The Court of Appeals, in reviewing a decision of the Michigan Tax Tribunal where fraud is not alleged, is limited to a review of whether the tribunal committed an error of law or adopted a wrong principle (Const 1963, art 6, § 28; MCL 205.753; MSA 7.650[53]).

3. TAXATION — TAX TRIBUNAL — ERROR OF LAW.

A decision of the Michigan Tax Tribunal that is not supported by competent, material, and substantial evidence is an error of law.

4. TAXATION — TRUE CASH VALUE.

True cash value of real property for taxation purposes means the usual selling price of the property; in determining true cash value an assessor must consider the existing use of the property along with other potential uses (MCL 211.27; MSA 7.27).

5. TAXATION — ASSESSMENTS OF REAL PROPERTY — INDUSTRIAL FACILITIES — TRUE CASH VALUE.

A large industrial facility which is suited for its current use and would be considered for purchase by a hypothetical buyer who wanted to own an industrial facility which could operate in accordance with the subject property's capabilities should be valued for taxation purposes as if there were such a potential buyer.

6. TAXATION — ASSESSMENTS OF REAL PROPERTY — TRUE CASH VALUE — TAX TRIBUNAL.

The Michigan Tax Tribunal, in determining the valuation of real property for tax assessment purposes, must make an independent determination of true cash value utilizing an approach which provides the most accurate valuation under the circumstances of each individual case.

*Parmenter, Forsythe, Rude, Van Epps, Briggs & Fauri* (by *John M. Briggs III* and *Arthur M. Rude*), for petitioner.

*Lawrence W. Morgan* and *William P. Spaniola,* for respondent.

Before: R. M. MAHER, P.J., and D. F. WALSH and C. STELL,* JJ.

PER CURIAM. Respondent appeals as of right from a Michigan Tax Tribunal decision reducing the property tax assessment on petitioner's real property for 1982, 1983, and 1984. The property is the site of a large industrial plant built in 1941 and 1942 for the purpose of manufacturing diesel tank engines. The Tax Tribunal found the true cash value of the property to be $3,765,000 for 1982, $3,770,000 for 1983, and $4,200,000 for 1984.

Respondent's appraiser offered a cost approach to valuation. Under this approach, the industrial plant's value was computed at replacement cost minus flat rate physical depreciation and "economic condition" factors. Land was valued at $5,-000 per acre. The true cash value of the land and industrial plant was determined to be $10,895,520 for each year.

Petitioner's appraisers offered three approaches to valuation: cost, market and income. Under the income approach, petitioner's appraisers derived a fair rental value for the industrial plant by analyzing "comparable" rental properties. After applying a capitalization-of-income technique to that fair rental value, the indicated income value was between 3.67 and 4 million dollars, plus attached fixtures. Under the cost approach, petitioner's appraisers reduced the replacement cost of the industrial plant by eighty-six percent for accrued depreciation (physical deterioration and functional and economic obsolescence). Land was valued at $2,000 per acre. The indicated cost values were $4,029,000

* Circuit judge, sitting on the Court of Appeals by assignment.

for 1982, $3,580,250 for 1983, and $4,293,000 for 1984, plus attached fixtures. Under the market approach, petitioner's appraisers analyzed eight comparable sales of general purpose industrial buildings, concluding that the current use of the subject industrial plant was but one type of general purpose and that alternative uses were economically feasible. The indicated market values, including between $265,000 and $300,000 for attached fixtures, were $3,765,000 for 1982, $3,770,000 for 1983, and $4,200,000 for 1984. Petitioner's final conclusion as to value was based on the market-value approach.

After considering all the evidence, the Tax Tribunal determined that the highest and best use of the property was for general industrial purposes and adopted petitioner's valuation as the most credible evidence of true cash value. Respondent's appraisal was rejected because it lacked documentation, explanation and analysis.

The burden of proof is on the taxpayer to establish the true cash value of the property. MCL 205.737(3); MSA 7.650(37)(3). The taxpayer must prove, by the greater weight of evidence, that the assessment was too high. *Alhi Development Co v Orion Twp,* 110 Mich App 764, 768; 314 NW2d 479 (1981). The weight given to evidence is a matter within the Tax Tribunal's discretion. *Kern v Pontiac Twp,* 93 Mich App 612, 622; 287 NW2d 603 (1979). The standard for reviewing Tax Tribunal decisions in property tax valuation cases is a limited one. When fraud is not alleged, the questions are whether the Tax Tribunal committed an error of law or adopted a wrong legal principle. *Teledyne Continental Motors v Muskegon Twp,* 145 Mich App 749, 753; 378 NW2d 590 (1985), Const 1963, art 6, § 28, and MCL 205.753; MSA 7.650(53). A decision of the Tax Tribunal is an "error of law"

if it is not supported by competent, material, and substantial evidence. *Connors & Mack Hamburgers, Inc v Dep't of Treasury,* 129 Mich App 627, 629; 341 NW2d 846 (1983).

Respondent's five issues on appeal are addressed as three claims of error. Respondent first claims that the Tax Tribunal erred in concluding that the highest and best use of the property was for general industrial uses, rather than its current limited use. True cash value means the "usual selling price" of property. MCL 211.27; MSA 7.27; *First Federal Savings & Loan Ass'n of Flint v Flint,* 415 Mich 702, 705; 329 NW2d 755 (1982). In determining true cash value, the assessor must consider the "existing use" of property. MCL 211.27(1); MSA 7.27(1). However, this does not preclude consideration of other potential uses. See *Kern, supra,* 621. To the extent that large industrial facilities are suitable for their current use and would be considered for purchase by a hypothetical buyer who would own and operate the facility in accordance with its capabilities, the property must be valued as if such a hypothetical buyer existed. *Clark Equipment Co v Leoni Twp,* 113 Mich App 778, 785; 318 NW2d 586 (1982). Value also does not include building improvements that do not add to the selling price of a building. See *First Federal Savings & Loan Ass'n of Flint, supra,* 706 (addressing building expenditures made to enhance a particular taxpayer's image and business).

In the instant case, the Tax Tribunal considered the existing use of the industrial plant and believed that manufacturing operations would continue for a considerable length of time. However, the Tax Tribunal also noted that the industrial plant was old and obsolete, and recited the following examples of functional deficiencies from the record:

1. Inadequate roof loads.

2. Overtaxed water and sewer services.

3. Unreliable electrical power distribution.

4. Inadequate wooden flooring.

5. Heating and sprinkling systems needing replacement.

6. Inadequate building ventilation.

7. Limited floor loads.

Petitioner submitted evidence showing that comparable plants throughout the midwest had been sold for general industrial purposes. Respondent failed to present any evidence on how the existing use of the industrial plant would affect its usual selling price under a market approach to valuation. The Tax Tribunal did not adopt a wrong principle or commit legal error in valuing the property as if a potential buyer would purchase it for general industrial purposes.

Respondent next claims that the Tax Tribunal erred in adopting petitioner's market valuation because the "comparables" selected by petitioner's appraisers were not truly comparable to the subject property's ongoing manufacturing use. It is the Tax Tribunal's duty to make an independent determination of true cash value utilizing an approach which provides the most accurate valuation under the circumstances of the individual case. *Alhi Development Co, supra,* 767, and *Antisdale v City of Galesburg,* 420 Mich 265, 277; 362 NW2d 632 (1984). Of all appraisal methods, the market approach is the only one which directly reflects the balance of supply and demand for a whole property in actual marketplace trading. *Antisdale, supra,* 276, n 1.

In adopting petitioner's market valuation, the Tax Tribunal was satisfied that petitioner's comparables had a high standard of comparability. Our

review of those comparables supports this conclusion. The highest and best uses of the properties were classified as general industrial, assembly, manufacturing, and warehouse. The buildings were constructed around the same time, were roughly the same size, and were made of similar building materials. Contrary to what respondent asserts, the properties were not "former" industrial plants, with valuations affected by an idle use on the date of sale. Petitioner's appraisal evidence generally indicates that each was sold or will be sold with the idea of continued industrial use. Furthermore, one of petitioner's appraisers testified that there was an existing market for such industrial properties, with active trading by those experienced in marketing and selling such properties. With the existence of an active market, the selling price would more closely reflect true cash value. The Tax Tribunal did not adopt a wrong principle or commit legal error in basing its market valuation on the comparable properties offered by petitioner.

Finally, respondent claims that the Tax Tribunal adopted wrong principles in its consideration of the fair rental value of the property derived by petitioner's appraisers under the income approach and the depreciation computed by petitioner's appraisers under the cost approach. These claimed errors concern the very deficiencies noted by the Tax Tribunal in deciding to adopt petitioner's market approach to valuation. Petitioner's income approach was considered deficient because property of this type is seldom, if ever, leased. Petitioner's cost approach was considered deficient because the reduction from replacement cost of about eighty-six percent for accrued depreciation did not seem logical for a building expected to continue its existing operation for a considerable time. At

most, it is apparent that the Tax Tribunal utilized these two approaches, and in particular the cost approach, as a check on the reasonableness of its valuation under the market approach. With regard to the claimed double depreciation, since the cost approach was not adopted, any error would be harmless, MCR 2.613(A). Moreover, this Court's review of the Tribunal's calculation of depreciation reflects that it was broken down into three categories so as to avoid duplication.

The Tax Tribunal's selection of the market approach to valuation comported with its duty to select an approach which provides the most accurate valuation under the circumstances of the case. Petitioner has not demonstrated any wrong principle or error of law affecting the Tax Tribunal's determination of true cash value.

Affirmed.